BEFORE THE UNITED STATES
JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

| | |
|---|---|
| *IN RE:* SOCIETY INSURANCE COMPANY COVID-19 BUSINESS INTERRUPTION PROTECTION INSURANCE LITIGATION | MDL Docket No. 2964 |

# SOCIETY INSURANCE'S
# RESPONSE TO ORDER TO SHOW CAUSE

Laura A. Foggan
April N. Ross
Austin J. Sutta
CROWELL & MORING LLP
1001 Pennsylvania Avenue NW
Washington, DC 20004-2595
Telephone: (202) 624-2774
Facsimile: (202) 628-5116
lfoggan@crowell.com

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ............................................................................................................1

II. LEGAL STANDARD .....................................................................................................2

III. ARGUMENT ...................................................................................................................2

    A. Centralizing The Society Actions Will Not Promote Judicial Efficiency Or The Convenience Of The Parties. ...............................................................................2

        1. These Actions Present Legal Issues Governed by Different State Law, Which Can Most Efficiently Be Addressed by Their Home Courts. ..........2

        2. There Are No Common Questions of Fact Because These Cases Are Plaintiff, Not Defendant, Specific. ........................................................5

    B. The Courts and Parties Can Achieve Any Needed Efficiencies in Society's Actions Without An MDL. ....................................................................................8

IV. CONCLUSION ..............................................................................................................11

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Bank of America Home Affordable Modification Program (HAMP) Contract Litig.*,
    746 F. Supp. 2d 1359 ................................................................................................... 11

*In re Brandywine Commc'ns Tech., LLC Patent Litig.*,
    959 F. Supp. 2d 1377 (J.P.M.L. 2013) ............................................................................ 3

*In re ClearTalk-ZTE Arbitration Litig.*,
    24 F. Supp. 3d 1374 (J.P.M.L. 2014) .............................................................................. 3

*Cole v. Elliot Equipment Co.*,
    653 F.2d 1031 (5th Cir. 1981) ......................................................................................... 4

*In re Comcast Corp. Employee Wage & Hour Employment Practices Litig.*,
    190 F. Supp. 3d 1344 (J.P.M.L. 2016) .......................................................................... 11

*In re Credit Card Payment Prot. Plan Mktg. & Sales Practices Litig.*,
    753 F. Supp. 2d 1375 (J.P.M.L. 2010) ............................................................................ 9

*In re Discover Card Payment Prot. Plan Mktg. & Sales Practices Litig.*,
    764 F. Supp. 2d 1341 (J.P.M.L. 2011) ............................................................................ 2

*In re Dometic Corp. Gas Absorption Refrigerator Prod. Liab. Litig.*,
    285 F. Supp. 3d 1358 (J.P.M.L. 2018) ............................................................................ 9

*Duchardt v. Midland Nat'l Life Ins. Co.*,
    265 F.R.D. 436 (S.D. Iowa 2009) .................................................................................... 4

*In re Environmental Protection Agency Pesticide Listing Confidentiality Litig.*,
    434 F. Supp. 1235 (J.P.M.L. 1977) ................................................................................. 2

*In re Facebook Use of Name And Likeness Litig.*,
    MDL No. 2288, 2011 WL 4684354 (J.P.M.L. Oct. 6, 2011) .......................................... 5

*In re Fla., P.R., & U.S. V.I. 2016 & 2017 Hurricane Seasons Flood Claims Litig.*,
    325 F. Supp. 3d 1367 (J.P.M.L. 2018) ........................................................................ 3, 8

*In re Healthextras Ins. Mktg. & Sales Practices Litig.*,
    24 F. Supp. 3d 1376 (J.P.M.L. 2014) .............................................................................. 3

*In re Helicopter Crash Near Weaverville, Cal., on Aug. 5, 2008*,
    626 F. Supp. 2d 1355 (J.P.M.L. 2009) ............................................................................ 2

*In re Honey Prod. Mktg. & Sales Practices Litig.*,
    883 F. Supp. 2d 1333 (J.P.M.L. 2012) ............................................................................ 4

## TABLE OF AUTHORITIES

**Page(s)**

*In re Narconon Drug Rehab. Mktg., Sales Practices & Prods. Liab. Litig.*,
   84 F. Supp. 3d 1367 (J.P.M.L. 2015) ........................................................................................ 5

*In re Real Estate Transfer Tax Litig.*,
   895 F. Supp. 2d 1350 (J.P.M.L. 2012) ...................................................................................... 2

*In re Teamster Car Hauler Products Liab. Litig.*,
   856 F. Supp. 3d 1343 (J.P.M.L. 2012) ...................................................................................... 8

*In re Teamster Car Hauler Products Liabil. Litig.*,
   856 F. Supp. 2d 1343 (2012) ..................................................................................................... 2

*Thompson v. Allianz Life Insurance Company of North America*,
   330 F.R.D. 219 (D. Minn. 2019) ............................................................................................... 4

*U.S. v. Kimbell Foods, Inc.*,
   440 U.S. 715, 740 (1979) .......................................................................................................... 4

**Statutes**

28 U.S.C. § 1404 ......................................................................................................................... 9, 11

28 U.S.C. § 1407 .................................................................................................................. 2, 5, 9, 11

28 U.S.C. § 1407(a) ......................................................................................................................... 2

I.  **INTRODUCTION**

On August 12, 2020, the Judicial Panel on Multidistrict Litigation ("Panel") ordered briefing on whether twenty-one federal court cases concerning insurance coverage issued by Society Insurance ("Society Actions") should be centralized in a single federal district court for pretrial proceedings. Centralization would be inefficient, would inconvenience parties and witnesses, and would needlessly complicate and delay, rather than streamline, the prompt resolution of the Society Actions.

Dispositive motions are pending in seventeen of the twenty-one federal actions against Society.[1] The most efficient means of resolving these cases is to allow the home courts to rule on those threshold legal issues. And if the Society Actions are not resolved through early motion practice, these COVID-19 business interruption coverage disputes will require individual, non-duplicative discovery in every case. As a group, the federal court cases against Society involve different insured businesses and industries, different state and local COVID-19 orders, different applicable law, and individualized damages allegations. Relevant discovery and evidence in each case will be largely plaintiff-specific, rather than defendant-specific. Transfer and centralization thus would not eliminate duplicative effort, prevent inconsistent pretrial rulings, or conserve judicial or party resources.

Just as the Panel found an industry-wide MDL for COVID-19 business interruption insurance cases was inappropriate because of the lack of common issues of fact, a Society-only MDL is unwarranted for the same reasons. Without common issues of fact, transfer and

---

[1]   Dispositive motions are not pending in these cases: *Purple Pig Cheese Bar & Pork Store, LLC v. Society Insurance*, Case No. 1:20–03164 (N.D. Ill.); *The Whistler LLC et al. v. Society Mutual Insurance Company*, Case No. 1:20–03959 (N.D. Ill.); *Riverside Enterprises, LLC v. Society Insurance*, Case No. 1:20–04178 (N.D. Ill.); and *Lucy's Burgers, LLC v. Society Insurance, Inc.*, Case No. 0:20-cv-01029-ECW (D. Minn.).

consolidation will not be efficient, and the requirements of 28 U.S.C. § 1407 are not met.

## II.   LEGAL STANDARD

Transfer and centralization of related civil actions is appropriate where (1) the actions "involv[e] one or more common questions of fact"; (2) transfer "will be for the convenience of parties and witnesses"; and (3) transfer "will promote the just and efficient conduct of such actions." 28 U.S.C. § 1407(a). Centralization is justified only where it "is necessary in order to eliminate duplicative discovery, prevent inconsistent pretrial rulings, and conserve the resources of the parties, their counsel and the judiciary." *In re Helicopter Crash Near Weaverville, Cal., on Aug. 5, 2008*, 626 F. Supp. 2d 1355, 1356 (J.P.M.L. 2009).

## III.   ARGUMENT

### A.   Centralizing The Society Actions Will Not Promote Judicial Efficiency Or The Convenience Of The Parties.

The key purpose of multidistrict litigation is to "place all actions . . . before a single judge who can structure streamlined pretrial proceedings that accommodate all parties' legitimate pretrial needs while ensuring that the common parties and witnesses are not subjected to demands that duplicate activity that will or has occurred in other actions." *In re Discover Card Payment Prot. Plan Mktg. & Sales Practices Litig.*, 764 F. Supp. 2d 1341, 1342 (J.P.M.L. 2011). Transfer of the Society Actions to a single MDL would not achieve that purpose.

#### 1.   These Actions Present Legal Issues Governed by Different State Law, Which Can Most Efficiently Be Addressed by Their Home Courts.

Centralization is not appropriate when, as here, the key issues are legal, not factual.[2]

---

[2] Common issues of law are not appropriate for centralization. *In re Real Estate Transfer Tax Litig.*, 895 F. Supp. 2d 1350 (J.P.M.L. 2012); *In re Environmental Protection Agency Pesticide Listing Confidentiality Litig.*, 434 F. Supp. 1235, 1236 (J.P.M.L. 1977). This Panel has consistently recognized that "Section 1407 does not, as a general rule, empower the Panel to transfer cases involving only common legal issues." *In re Teamster Car Hauler Products Liabil.*

2

Dispositive motions are pending in seventeen of the Society cases,[3] and many claims can and will be resolved on the face of the pleadings. In none of the Society cases has the home court allowed discovery, and in most instances neither party has suggested that discovery is necessary at this stage of the claims. Halting this early motion practice while an MDL court grapples with what may be unneeded discovery involving facts unique to each plaintiff, or prematurely dives into issues of class certification, will needlessly slow down the resolution of these actions. This Panel has noted that centralization is not appropriate for cases that are likely subject to early resolution and thus without the need for coordination of extensive discovery of overlapping facts and evidence. *See, e.g., In re Brandywine Commc'ns Tech., LLC Patent Litig.*, 959 F. Supp. 2d 1377, 1378 (J.P.M.L. 2013) (no centralization where actions are "being litigated in a manner that is likely to lead to their resolution, whether through settlement or other means, within a relatively short period of time"); *In re Fla., P.R., & U.S. V.I. 2016 & 2017 Hurricane Seasons Flood Claims Litig.*, 325 F. Supp. 3d 1367, 1369 n4 (J.P.M.L. 2018) (early dismissal of certain actions sought to be centralized supported arguments that "very few of these cases are litigated through trial or require substantial judicial involvement").

Judicial efficiency is best achieved by allowing resolution of threshold legal questions on whether the Society Policies afford coverage for COVID-19 claims *before* engaging in

---

*Litig.*, 856 F. Supp. 2d 1343 (2012) (transfer denied where "the defects alleged and injuries suffered vary among these actions"). *See also In re Healthextras Ins. Mktg. & Sales Practices Litig.*, 24 F. Supp. 3d 1376, 1377 (J.P.M.L. 2014) (denying centralization because "the key issue in all cases is legal in nature"); *In re ClearTalk-ZTE Arbitration Litig.*, 24 F. Supp. 3d 1374, 1375 (J.P.M.L. 2014) ("[T]he resolution of purely a legal issue or issues is generally insufficient to warrant centralization").

[3]   Dispositive motions are not pending in these cases: *Purple Pig Cheese Bar & Pork Store, LLC v. Society Insurance*, Case No. 1:20–03164 (N.D. Ill.); *The Whistler LLC et al. v. Society Mutual Insurance Company*, Case No. 1:20–03959 (N.D. Ill.); *Riverside Enterprises, LLC v. Society Insurance*, Case No. 1:20–04178 (N.D. Ill.); and *Lucy's Burgers, LLC v. Society Insurance, Inc.*, Case No. 0:20-cv-01029-ECW (D. Minn.).

potentially superfluous discovery. The judges before whom these motions are pending can assess and resolve the claims before them based on the applicable law and facts of each individual case, without delay occasioned by contemporaneous efforts to supervise litigation of twenty other cases with different underlying facts, procedural postures, and applicable state law.

Centralized resolution is particularly undesirable because the Society Actions present legal issues under four different states' laws.[4] These insurance law cases should be decided by federal judges sitting in the respective state where an action is filed. As the U.S. Supreme Court has noted, "the federal judges who regularly deal with questions of state law in their respective districts and circuits are in a better position [] to determine how local courts would dispose of such issues." *U.S. v. Kimbell Foods, Inc.*, 440 U.S. 715, 740 (1979).[5] There is no reason to have a judge sitting in Wisconsin make determinations under Illinois law, or to have a judge sitting in Tennessee make determinations under Iowa, Minnesota or Indiana law.

As longstanding jurisprudence on MDL centralization makes clear, it is undesirable for all parties to have legal issues resolved in a forum with less familiarity with applicable state law than their home court. This Panel has held that cases bringing different claims that must be resolved under different states' laws are not suited for centralization. *See, e.g., In re Honey Prod. Mktg. & Sales Practices Litig.*, 883 F. Supp. 2d 1333 (J.P.M.L. 2012) (denying motion for

---

[4]   *See, e.g., Duchardt v. Midland Nat'l Life Ins. Co.*, 265 F.R.D. 436, 446 (S.D. Iowa 2009) (state law "var[ies] as to their rules regarding contract interpretation, especially regarding the use of extrinsic evidence in contract interpretation"); *Thompson v. Allianz Life Insurance Company of North America*, 330 F.R.D. 219, 226 (D. Minn. 2019) (denying class certification because where breach of contract claims are raised "under the laws of multiple states, and each state's laws. . . are different," the "individual differences simply overwhelm any common questions").

[5]   *See also Cole v. Elliot Equipment Co.*, 653 F.2d 1031, 1034 (5th Cir. 1981) ("a federal trial judge who sits in a particular state and has practiced before its courts 'is better able to resolve certain questions about the law of that state than is some other federal judge who has no such personal acquaintance with the law of the state'").

transfer where "[t]he actions involve . . . different state regulations subject to different legal challenges by the defendants"). Society's cases can proceed most efficiently in their home courts where they will focus on the policy language at issue, and are subject to early dispositive motions on the law.

### 2. There Are No Common Questions of Fact Because These Cases Are Plaintiff, Not Defendant, Specific.

Centralization is not appropriate under Section 1407 because the Society Actions do not share sufficient common questions of fact and individual fact issues predominate in the separate cases. *See In re Narconon Drug Rehab. Mktg., Sales Practices & Prods. Liab. Litig.*, 84 F. Supp. 3d 1367, 1368 (J.P.M.L. 2015). Even where there is "general overlap among the actions" there must be "shared factual questions [that] are sufficiently complex or numerous to justify centralization." *In re Facebook Use of Name And Likeness Litig.*, MDL No. 2288, 2011 WL 4684354, at *1 (J.P.M.L. Oct. 6, 2011) (denying transfer). Here, the claims for relief vary from case to case, the circumstances of the policyholders are distinct, and the factual defenses to claims for relief will vary depending on information specific to each plaintiff. Because there are not sufficient common issues of fact, transfer and centralization will not facilitate the efficient adjudication of the Society Actions. Further, it will be more convenient for the parties and witnesses in the Society Actions to have their cases proceed in their home courts, given that discovery will be plaintiff-focused in these cases.

If some cases proceed beyond initial dispositive motions, most discovery will focus on evidence about each of the plaintiff-policyholders, not Society. As the Panel noted in its decision denying industry-wide centralization, these cases involve policies "purchased by different businesses in different industries located in different states." *In re COVID-19 Bus. Interruption*

*Prot. Ins. Litig.*, No. MDL 2942, 2020 WL 4670700, at *2 (J.P.M.L. Aug. 12, 2020). The varying nature of the insured businesses and industries, applicable COVID-19 orders and state laws, and damages alleged will all require plaintiff-specific discovery. Centralizing these actions at an insurer-level does not achieve any efficiencies, and will only slow down the resolution of actions in which "time is of the essence." *Id*. Requiring one judge to manage all of the independent federal actions brought by Society's policyholders is likely to be far slower than allowing the cases to proceed in their home courts, where the presiding judge will be more familiar with that state's laws and closure orders. Centralization is less convenient for parties and witnesses in other jurisdictions, and efficiency will be lost, not gained, through a multi-state MDL centralizing dissimilar policyholders residing in different jurisdictions into a single proceeding.

The core factual issues in these cases relate to the individualized circumstances of each policyholder's alleged loss, which are unique to each case. The nature of the insured business varies widely among plaintiffs, and for many of the class actions, includes every type of business for which Society writes policies.[6] Society provides business interruption coverage for: (1) Restaurants; (2) Bars & Taverns; (3) Food & Beverage Manufacturing; (4) Gas Stations & Convenience Stores; (5) Grocery Stores & Supermarkets; (6) Medical Offices; (7) Auto Service, Garages & Repair Shops; (8) Artisan Contractors & Cleaning Services; (9) Hotels & Hospitality;

---

[6] For example, the putative class in *Roscoe Same LLC* includes "[a]ll persons and entities that had business income, civil authority, or extra expense coverage under an insurance policy issued by Society Insurance, suffered a suspension of business related to COVID-19, and were not compensated for their losses by Society Insurance." *Roscoe Same LLC, et al. v. Society Insurance*, Case No. 1:20-cv-02641 (N.D. Ill.).

and (10) Rental Properties.[7] The types of loss claimed by a shuttered bar differ from those claimed by a medical office that provided urgent care or emergency services, or a restaurant that continued sales of take-out foods under government COVID-19 social distancing orders. Discovery in these cases will need to be specific to each insured, focused on their business, the effect of closure orders on that business, and the specific losses they claim to have sustained as a result.

The state and local COVID-19 orders vary on their effective date, how much businesses could continue to operate, and which specific business operations were restricted in whole or in part.[8] And each insured's response to the applicable state order was very likely different. For example, did plaintiff partially or totally cease operations? If a business closed down, was it mandated by state order or was it by choice, based considerations such as convenience, staffing issues, or profitability decisions? If operations were reduced, at what capacity did the insured business run? Was capacity reduced by mandate or because of staffing or other factors? For a restaurant, did the insured offer outdoor dining, takeout, delivery, drinks to go, or all of the foregoing? When did the applicable state order allow outdoor dining to resume, and when did the insured begin serving food and drinks outdoors? For other types of businesses, were they considered essential businesses? Were their operations restricted by state orders governing businesses or because of customers electing to stay at home?

Finally, to the extent the cases proceed, damages calculations are fact intensive inquiries

---

[7]   Society Insurance, Business Insurance Programs, https://www.societyinsurance.com/business_insurance/default.aspx (last visited August 21, 2020).

[8]   The date of closure orders in the six states in which Society writes coverage are: Illinois – March 15, 2020; Indiana – March 24, 2020; Iowa – March 17, 2020; Minnesota – March 16, 2020; Tennessee – March 22, 2020; and Wisconsin – March 24, 2020.

specific to each policyholder. To calculate damages, each insured will have to produce evidence of: (1) operational capacity; (2) revenue; (3) expenses; (4) overhead; (5) projections of the foregoing for 2020 vs. the actual numbers for 2020; (6) historical revenue for the period of the alleged interruption; (7) historical closure of insured businesses during the period of the alleged interruption; and (8) actions taken to mitigate any damages. Damages calculations necessarily require highly factual inquiries and expert analysis, and are not susceptible to common proof or inquiry. None of the damages evidence produced in one case will be relevant to any other case.

The need to reconcile the unique facts of each case, including the nature of plaintiff's business, the varying degrees of damages suffered, and the geographic locality of the parties and corresponding state COVID-19 orders and applicable law all disfavor centralization. *In re Fla.*, 325 F. Supp. 3d at 1368-69 (denying motion to transfer despite "superficial commonality" because "[e]ach case necessarily involves a different property, different insureds, different witnesses, different proofs of loss, and different damages"); *In re Teamster Car Hauler Products Liab. Litig.*, 856 F. Supp. 3d 1343 (J.P.M.L. 2012) (denying motion to transfer where the "injuries suffered vary among these actions").

**B.    The Courts and Parties Can Achieve Any Needed Efficiencies in Society's Actions Without An MDL.**

As the Panel noted in its order denying multi-insurer centralization, "there are alternatives to centralization available to minimize any duplication in pretrial proceedings, including informal cooperation and coordination of the actions. The parties also may seek to relate actions against a common insurer in a given district before one judge." *In re COVID-19*, 2020 WL 4670700, at *4.

Unlike situations with far-flung cases that may not easily be coordinated, Society is a regional carrier writing coverage in six states – Illinois, Indiana, Iowa, Minnesota, Tennessee and

8

Wisconsin. Most of the federal actions against Society are pending in the Northern District of Illinois, and the parties and courts in that district can determine what, if any, coordination is needed under available, existing tools. This is a superior approach to centralization. It allows the cases against Society to proceed in their home courts, avoids inconveniencing plaintiffs residing in other states, eliminates the need to evaluate multiple states' distancing orders in a single proceeding, and likely avoids the need to apply different state law. It also allows the courts overseeing the claims to decide whether and in what regard any coordination is necessary or appropriate given the likelihood of early resolution, the procedural posture of the actions, and a more granular assessment of any factual issues at stake.

The Panel widely encourages the use of information coordination by the parties or Section 1404 transfers, often finding them preferable to Section 1407 centralization. *See, e.g.*, *In re Dometic Corp. Gas Absorption Refrigerator Prod. Liab. Litig.*, 285 F. Supp. 3d 1358, 1360 (J.P.M.L. 2018); *In re Credit Card Payment Prot. Plan Mktg. & Sales Practices Litig.*, 753 F. Supp. 2d 1375, 1376 (J.P.M.L. 2010) (encouraging "various alternatives to transfer which may minimize the risk of duplicative discovery and/or inconsistent pretrial rulings"). Here, seventeen of the twenty-one Society Actions are already in the same court – the Northern District of Illinois. And a motion to relate and reassign cases is pending in the Northern District of Illinois as to fourteen Society Actions.[9]

---

[9] The fourteen actions are: *Big Onion Tavern Group, LLC et al. v. Society Insurance, Inc.*, Case No. 1:20-cv-02005 (N.D. Ill.); *Billy Goat Tavern I, Inc. et al. v. Society Insurance*, Case No. 1:20-cv-02068 (N.D. Ill.); *Biscuit Cafe Inc. et al v. Society Insurance, Inc.*, Case No. 1:20–02514 (N.D. Ill.); *Cardelli Enterprise, L.L.C. v. Society Insurance,* Case No. 1:20–03263 (N.D. Ill.); *Ciao Baby On Main LLC v. Society Insurance Inc.,* Case No. 1:20–03251 (N.D. Ill.); *Dunlays Management Services, LLC et al. v. Society Insurance,* Case No. 1:20-cv-02524 (N.D. Ill.); *JDS 1455, Inc. v. Society Insurance*, Case No. 1:20-cv-02546 (N.D. Ill.); *351 Kingsbury Corner, LLC v. Society Insurance*, Case No. 1:20-cv-02589 (N.D. Ill.); *Roscoe Same LLC et al. v. Society Insurance,* Case No. 1:20-cv-02641 (N.D. Ill.); *Kedzie Boulevard Cafe Inc et al. v.*

9

The judges and parties in those cases should determine whether and which coordination measures are warranted as to each dispute. In some of the Illinois cases, plaintiffs have affirmatively opposed reassignment, citing concerns that their claims "are not susceptible to disposition in a single proceeding," and that "reassignment will not result in substantial saving of judicial time and effort." These plaintiffs note that they are "not pursuing any claims that require individualized, fact specific inquiries" and therefore do not "require any discovery to resolve the primary issue presented." And as one policyholder urged, "reassignment would invalidate the narrow and pointed nature of Plaintiff's claim and instead aggregate it with the hodge-podge of class actions, declaratory judgment actions, [and] claims for statutory bad-faith . . ." See Billy Goat's Position Statement Opposing Reassignment, Dkt. No. 96; Dunlay's Position Statement Opposing Reassignment, Dkt. No. 99, *Big Onion Tavern Group. LLC et al. v. Society Insurance, Inc*. Case No. 1:20-cv-02005 (N.D. Ill.).

Centralization of all Society Actions in a single MDL is a blunt and unnecessary tool that raises concerns for both plaintiffs and defendant. If both class actions and individual actions against Society were centralized, resolution of the individual actions would be unnecessarily delayed while the Panel addressed class certification issues for other cases. To the extent proposed class definitions overlap, most of the putative class actions against Society are pending in the Northern District of Illinois, which can address the overlap through more nuanced decisions using tools such as coordination or reassignment to a single judge. When the Panel has considered overlapping classes as a factor favoring centralization, other factors have also

---

*Society Insurance Inc.*, Case No. 1:20-cv-02692 (N.D. Ill.); *Purple Pig Cheese Bar & Pork Store, LLC v. Society Insurance*, Case No. 1:20–03164 (N.D. Ill.); *The Barn Investment LLC, et al. v. Society Insurance*, Case No. 1:20–03142 (N.D. Ill.); *The Whistler LLC, et al. v. Society Mutual Insurance Company*, Case No. 1:20–03959 (N.D. Ill.); and *Valley Lodge Corp v. Society Insurance, a Mutual Company*, Case No. 1:20–02813 (N.D. Ill.).

supported centralization, such as the presence of common fact issues and the desire to avoid duplicative discovery. In many of those cases, the parties also consented to centralization. *See, e.g., In re Bank of America Home Affordable Modification Program (HAMP) Contract Litig.*, 746 F. Supp. 2d 1359, 1361 (centralization granted where "no party dispute[d] that the putative class actions should be centralized"). Here, there are no strong grounds for centralization and many individual *and* class action plaintiffs join defendant Society in opposing it.

The panel should not impose centralization here, where there are preferred and more flexible means available to achieve any needed coordination. The tools available to the federal courts allow the Northern District of Illinois flexibility to determine whether all, some, or none of the cases against Society that are pending in that district should be reassigned or otherwise coordinated, taking full account of the specific circumstances of each suit. And the federal cases outside that district could remain in their home courts, be transferred under Section 1404, or informally coordinated by agreement of the parties. *See In re Comcast Corp. Employee Wage & Hour Employment Practices Litig.*, 190 F. Supp. 3d 1344, 1345 n2 (J.P.M.L. 2016) (noting that Section 1404 transfer "carries benefits unavailable to parties transferred via Section 1407," including a more streamlined action). Here, there is no basis for centralization where the Society Actions do not involve common questions of fact, transfer would not be convenient for parties and witnesses, and transfer would not promote the just and efficient conduct of these actions.

## IV.   CONCLUSION

Creating an MDL for the Society Actions would be inefficient and would needlessly complicate and delay the prompt resolution of these matters. Because the requirements of 28 U.S.C. § 1407 are not met, Society respectfully requests that the Panel deny the motions to transfer for the Society Actions, and allow the cases to proceed in their home courts where they can be most expeditiously adjudicated.

Dated: August 26, 2020

                Respectfully submitted,

                CROWELL & MORING LLP
                Laura A. Foggan

                /s/ Laura A. Foggan
                Laura A. Foggan
                CROWELL & MORING LLP
                1001 Pennsylvania Avenue NW
                Washington, DC 20004-2595
                Telephone: (202) 624-2774
                Facsimile: (202) 628-5116
                lfoggan@crowell.com
                *Attorney for Defendant Society Insurance*