**BEFORE THE UNITED STATES**
**JUDICIAL PANEL ON MULTIDISTRICT LITIGATION**

| | |
|---|---|
| In re: SOCIETY INSURANCE COMPANY COVID-19 BUSINESS INTERRUPTION INSURANCE COVERAGE LITIGATION | MDL No. 2964 |

**PLAINTIFFS' INTERESTED PARTY RESPONSE TO ORDER TO SHOW**
**CAUSE FOR TRANSFER AND COORDINATION OR CONSOLIDATION**
**UNDER 28 U.S.C. §1407**

The Whistler LLC and Sleeping Village, Inc. ("The Whistler and Sleeping Village Plaintiffs") by and through their undersigned counsel and pursuant to 28 U.S.C.§1407 and Rule 6.2(e) of the Rules of Procedure of the United States Judicial Panel on Multidistrict Litigation ("Panel"), respectfully submit the following interested party response to the Panel's Order to Show Cause as to why all COVID-19-related business interruption cases against Society Insurance, Inc. (the "Society Actions") should not be transferred and coordinated.

**I.      INTRODUCTION**

Twenty-one cases are pending against Society Insurance ("Society"). Seventeen are in the Northern District of Illinois, two are in the Eastern District of Wisconsin, one is in the Middle District of Tennessee, and one is in District of Minnesota. The Illinois cases are before seven judges. There is a pending motion to relate all Northern District of Illinois cases against Society before a single judge. *See Big Onion Tavern Grp., LLC v. Society Ins., Inc.*, No. 1:20-cv-02005, ECF Nos. 79, 87, 89, 91, 93, 95, 98-107).  The Whistler and Sleeping Village Plaintiffs support that motion.

## II.   CENTRALIZATION WILL PROMOTE SECTION 1407'S GOALS OF ENSURING THE JUST AND EFFICIENT CONDUCT OF THE ACTIONS AND AVOIDING INCONSISTENT OR CONFLICTING DETERMINATIONS

28 U.S.C. §1407(a) provides, in relevant part:

> When civil actions involving one or more common questions of fact are pending in different districts, such actions may be transferred to any district for coordinated or consolidated pretrial proceedings. Such transfers shall be made by the judicial panel on multidistrict litigation authorized by this section upon its determination that transfers for such proceedings will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions.

"Centralization under Section 1407 is . . . necessary in order to eliminate duplicative discovery; prevent inconsistent pretrial rulings, especially with respect to class certification; and conserve the resources of the parties, their counsel and the judiciary." *In re High Sulfur Content Gasoline Prod. Liab. Litig.*, 344 F. Supp. 2d 755, 757 (J.P.M.L. 2004); *In re S. Pac. Transp. Co. Emp't Practices Litig.*, 429 F. Supp. 529 531 (J.P.M.L. 1977); *see also In re Terrorist Attacks on Sept. 11, 2001*, 295 F. Supp. 2d 1377, 1378 (J.P.M.L. 2003). The litmus test of transferability and coordination under Section 1407 is the presence of common questions of fact. *In re Fed. Election Campaign Act Litig.*, 511 F. Supp. 821, 823 (J.P.M.L. 1979); *see also In re Meridia Prod. Liab. Litig.*, 217 F. Supp. 2d 1377, 1378 (J.P.M.L. 2002);

The Society Actions are particularly well suited for MDL treatment. First, the individual cases share fundamental factual and legal questions. Society is a regional insurer that, to the best of Whistler and Sleeping Village Plaintiffs' knowledge, uses only a small number of largely identical policy forms. Common questions exist as to Society's uniform practices to deny business interruption claims relating to stay-at-home orders intended to mitigate the spread of COVID-19, and Society's investigation, if any, into those claims.

Second, centralization will also prevent duplicative discovery and inconsistent factual and legal determinations. Society has already filed dispositive motions raising nearly identical arguments as to why the insured's claim is not entitled to be paid.  Dispositive and other motions filed by the parties in the Society Actions will therefore require the resolution of common issues of fact and law. *See, e.g., In re Oil Spill by "Amoco Cadiz" off the Coast of France on Mar. 16, 1978*, 471 F. Supp. 473, 478 (J.P.M.L. 1979) (ordering centralization where actions "involve common questions of fact"). It would be a waste of judicial resources to have essentially the same issues decided by multiple different judges. Moreover, in response to Society's motions, the insureds will inevitably raise different arguments on the same legal issues. This situation invites conflicting pretrial rulings relating to interpretation of the common insurance policy language.

Society asserts that this Panel's denial of an industry-wide MDL suggests there are no common questions of fact. Society overreads this Panel's decision. With respect to an insurer-specific MDL (as opposed to an industry-wide MDL), this Panel stated:

> [T]he arguments for insurer-specific MDLs are more persuasive. Such an MDL would be limited to a single insurer or group of related insurers and thus would not entail the managerial problems of an industry-wide MDL involving more than a hundred insurers. The actions are more likely to involve insurance policies utilizing the same language, endorsements, and exclusions. Thus, there is a significant possibility that the actions will share common discovery and pretrial motion practice. Moreover, centralization of these actions could eliminate inconsistent pretrial rulings with respect to the overlapping nationwide class claims that most of the insurers face. An insurer-specific MDL therefore could achieve the convenience and efficiency benefits envisioned by Section 1407.

*In re Covid-19 Bus. Interruption Prot. Ins. Litig*., No. MDL No. 2942, 2020 U.S. Dist. LEXIS 144446, at *6-7 (J.P.M.L. Aug. 12, 2020)

Society further argues that because dispositive motions are pending in many of the cases against them, many of the claims will be resolved on the face of the pleadings, and that centralization is not appropriate for cases that are likely subject to early resolution. That argument also fails. In *In Re: Uber Techs, Inc*., the Uber defendants objected to centralization based on the asserted likelihood that their pending motions to compel individual arbitration would bring an early resolution to the cases. The Panel, in granting centralization, found that:

> [S]uch an assessment of the merits of the actions is beyond the Panel's authority. Thus, where the litigation involves common factual questions, centralization may be appropriate even though defendants predict that they will prevail on dispositive motions prior to commencement of discovery. Centralization will avoid inconsistent rulings on these and other common pretrial motions.

*In Re: Uber Techs, Inc*., 304 F.Supp. 3d 1351, 1353 (J.P.M.L. 2018). Simply put, centralization will promote efficiency by allowing common disputes related to the coverage and standard contract provisions provided by Society's policies to be argued before and resolved by a single court.

### III.   THE PANEL SHOULD CENTRALIZE THE TWENTY-ONE CASES CONCERNING INSURANCE COVERAGE ISSUED BY SOCIETY INSURANCE ("SOCIETY ACTIONS") IN THE U.S. DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS.

A critical purpose of § 1407 transfers is to serve "the convenience of parties and witnesses."  28 U.S.C. § 1407. As an initial matter, most of the Society Actions are already pending in the Northern District of Illinois. More importantly, the Panel has often stated that the location of a proposed transferee district is an important consideration. Indeed, geographic centrality is of considerable importance where, as here, no district stands out as the "focal point" of a nationwide litigation. *See, e.g., TJX Cos., Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 505 F. Supp. 2d 1379, 1380 (J.P.M.L. 2007) (selecting "centrally located" district for "nationwide docket"); *In re: Motor Fuel Temperature Sales Practices Litig.*, 493 F.

Supp. 2d 1365, 1367 (J.P.M.L. 2007) (selecting judge with "the time and experience to steer [the] litigation" in a district that was "relatively conveniently located for many parties and witnesses").

With respect to the Northern District of Illinois specifically, the Panel has consistently held that Chicago's geographically central location is a "reason commending transfer to the Northern District of Illinois" if "litigation is nationwide." *In re: Folding Carton Antitrust Litig.*, 415 F. Supp. 384, 386 (J.P.M.L. 1976); *see also In re: "Factor VIII or IX Concentrate Blood Prods." Prods. Liability Litig.*, 853 F. Supp. 454, 455 (J.P.M.L. 1993) ("Chicago is a geographically central location for this nationwide litigation"); *In re: Air Fare Litig.*, 322 F. Supp. 1013, 1015 (J.P.M.L. 1971) ("The geographical location of the transferee court is especially relevant when counsel must travel from distant parts of the country.  We think that the Northern District of Illinois will be more convenient for counsel, and thus less expensive for their clients, than either of the other proffered districts."); *In re: Butterfield Patent Infringement*, 328 F. Supp. 513 (J.P.M.L. 1970) (transferring actions to the Northern District of Illinois because "Chicago is geographically central"). It is also indisputable that the Northern District of Illinois is an "accessible, urban district equipped with the resources that this complex docket is likely to require." *In re: Comp. of Managerial, Prof'l & Technical Employees Antitrust Litig.* 206 F. Supp. 2d at 1376. Although many districts are in urban settings, no district thus far proposed is as well equipped to manage the proposed MDL as the Northern District of Illinois. Chicago's easily accessible airports and geographic centrality make it the ideal location for managing this nationwide litigation. In addition, Chicago is appropriate because Society is headquartered in nearby Milwaukee, Wisconsin. Finally, the Northern District of Illinois has the requisite resources and capacity to manage this proceeding. *See*, *e.g.*, *In Re: Navistar Maxxforce Engines*

*Mktg., Sales Practices & Prod. Liab. Litig.,* 67 F. Supp. 3d 1382, 1384 (J.P.M.L. 2014) (recognizing that the Northern District of Illinois is "a convenient and accessible forum with the resources to devote to [MDL proceedings]").  Finally, the vast majority of cases already filed are filed in the Northern District of Illinois.

## IV.    CONCLUSION

Centralization in the Northern District of Illinois will prevent duplicative discovery on common questions of fact and law. It will further serve to avert inconsistent and conflicting pretrial rulings, and conserve the resources of the parties, their counsel, and the judiciary. The Northern District of Illinois offers a geographically central location that is convenient for the parties and the witnesses and is the appropriate venue for this proceeding. The twenty-one cases concerning insurance coverage issued by Society ("Society Actions") should be centralized in the U.S. District Court for the Northern District of Illinois.

Date: September 2, 2020                                  Respectfully submitted,

                                                                        /s/  Jay Angoff
                                                                        _____

Gary M. Klinger                                        Jay Angoff
gklinger@masonllp.com                           jangoff@findjustice.com
MASON LIETZ & KLINGER LLP            Cyrus Mehri
227 West Monroe St., Ste. 2100              cmehri@findjustice.com
Chicago, IL 60606                                    Joshua Karsh
Tel.: 312-283-3814                                   jkarsh@findjustice.com
                                                                Ezra Bronstein
Gary E. Mason                                         ebronstein@findjustice.com
gmason@masonllp.com                            MEHRI & SKALET, LLC
Danielle L. Perry                                      1250 Connecticut Ave NW, Suite 300
dperry@masonllp.com                             Washington, DC 20036
MASON LIETZ & KLINGER LLP            Tel.: (202) 822-5100
5101 Wisconsin Ave., NW Ste. 305         Fax: (202) 822-4997
Washington, DC 20016
Tel.: 202-429-2290

Fax.: 202-429-2294

Jonathan Shub                                      Joel R. Rhine
jshub@shublawyers.com                   jrr@rhinelawfirm.com
Kevin Laukaitis, Esq.                          Martin A. Ramey
Klaukaitis@shublawyers.com           mjr@rhinelawfirm.com
SHUB LAW FIRM LLC                      Rhine Law Firm, P.C.
134 Kings Hwy. E.                              1612 Military Cutoff Road, Suite 300
2nd Floor                                             Wilmington, North Carolina 28403
Haddonfield, New Jersey 08033        Tel: (910) 772-9960
Tel.: 856-772-7200                              Fax: (910) 772-9062

**Attorneys for Plaintiffs The Whistler LLC and Sleeping Village, Inc**

## PROOF OF SERVICE

In compliance with Rule 4.1(a) of the Rules of Procedure for the United States Judicial Panel on Multidistrict Litigation, I hereby certify that on September 2, 2020, I caused the accompanying Interested Party Response to be filed with the Court's CM/ECF system, which sends a service copy to all registered parties in the action at their associated email addresses.

Date: September 2, 2020                          Respectfully submitted,

/s/  Jay Angoff
_____