# BEFORE THE UNITED STATES
# JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

| | |
|---|---|
| *IN RE:* SOCIETY INSURANCE COMPANY COVID-19 BUSINESS INTERRUPTION PROTECTION INSURANCE LITIGATION | MDL Docket No. 2964 |

## SOCIETY INSURANCE'S
## <u>REPLY IN RESPONSE TO ORDER TO SHOW CAUSE</u>

Laura A. Foggan
April N. Ross
Austin J. Sutta
CROWELL & MORING LLP
1001 Pennsylvania Avenue NW
Washington, DC 20004-2595
Telephone: (202) 624-2774
Facsimile: (202) 628-5116
lfoggan@crowell.com

# TABLE OF CONTENTS

**<u>Page</u>**

I.      INTRODUCTION ........................................................................................................ 1

II.     ARGUMENT ............................................................................................................... 1

     A.     Most of the Parties Oppose Centralization. ................................................... 1

     B.     The Northern District of Illinois Can Best Determine Whether The Society
            Actions Should Be Coordinated.................................................................... 2

     C.     The Issues To Be Adjudicated Are Legal ..................................................... 4

III.    CONCLUSION............................................................................................................ 6

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re Asbestos and Asbestos Insulation Material Prods. Liab. Litig.*,
431 F. Supp. 906 (J.P.M.L. 1977)..................................................................................1

*In re Asbestos School Prods. Liabil. Litig.*,
606 F. Supp. 713 (J.P.M.L. 1985)..................................................................................1

*In re Best Buy Co., Inc., California Song-Beverly Credit Card Act Litig.*,
804 F. Supp. 2d 1376 ....................................................................................................2

*In re ClearTalk-ZTE Arbitration Litig.*,
24 F. Supp. 3d 1374 (J.P.M.L. 2014)............................................................................5

*In re CVS Caremark Corp. Wage and Hour Employment Practices Litig.*,
684 F. Supp. 2d 1377 (J.P.M.L. 2010)..........................................................................1

*In re Environmental Protection Agency Pesticide Listing Confidentiality Litig.*,
434 F. Supp. 1235 (J.P.M.L. 1977)...............................................................................5

*In re Healthextras Ins. Mktg. & Sales Practices Litig.*,
24 F. Supp. 3d 1376 (J.P.M.L. 2014)............................................................................5

*In re "Lite Beer" Trademark Litig.*,
437 F. Supp. 754 (J.P.M.L. 1977).................................................................................1

*In re Medi-Cal Reimbursement Rate Reduction Litig.*,
652 F. Supp. 2d 652 1378 (J.P.M.L. 2009)...................................................................5

*In re Six Flags Fair and Accurate Credit Transactions Act (FACTA) Litigation*,
289 F. Supp. 3d 1343 (J.P.M.L. 2018)..........................................................................2

*In re Teamster Car Hauler Products Liabil. Litig.*,
856 F. Supp. 2d 1343 (2012) ........................................................................................5

*In re Terrorist Attacks on Sept. 11, 2001*,
295 F. Supp. 2d 1377 (J.P.M.L. 2003)..........................................................................5

*In re Women's Clothing Antitrust Litig.*,
455 F. Supp. 1388 (J.P.M.L. 1978)...............................................................................1

**Statutes**

28 U.S.C. § 1404(a) ...............................................................................................................3

28 U.S.C. § 1407................................................................................................ *passim*

## I.      INTRODUCTION

Society Insurance ("Society") and a clear majority of the federal court plaintiffs in the Society suits oppose centralization because it would be inefficient and would needlessly delay resolution of the Society actions. The actions do not present common issues of fact that would benefit from centralized proceedings, and the Northern District of Illinois already is addressing less drastic ways to coordinate most of these cases. Centralization under Section 1407 is not appropriate here.

## II.     ARGUMENT

### A.      Most of the Parties Oppose Centralization.

Of the parties responding to the Panel's Order to Show Cause, 62 plaintiffs and Society oppose centralization, while only 19 plaintiffs favor centralization.[1] When the "clear majority of plaintiffs, as well as all defendants, oppose centralization," this "weigh[s] against centralization." *In re CVS Caremark Corp. Wage and Hour Employment Practices Litig.*, 684 F. Supp. 2d 1377 (J.P.M.L. 2010); *In re "Lite Beer" Trademark Litig.*, 437 F. Supp. 754, 755 (J.P.M.L. 1977) (denying transfer and noting the "nearly unanimous opposition of the parties to transfer" as a "persuasive factor").[2]

---

[1]     The plaintiffs who responded to the Order to Show Cause supporting transfer are: JDS 1455, Inc. (1 plaintiff); 351 Kingsbury Corner, LLC (1 plaintiff); Roscoe Same LLC (3 plaintiffs); The Barn Investment LLC (3 plaintiffs); Rising Dough, Inc. (8 plaintiffs); and Kedzie Boulevard Cafe, Inc. (3 plaintiffs). The plaintiffs who responded or replied to the Order to Show Cause opposing transfer are: Big Onion Tavern Group, LLC (55 plaintiffs); Billy Goat Tavern I, Inc. (6 plaintiffs); and Peg Leg Porker, LLC (1 plaintiff).

[2]     *See also In re Asbestos School Prods. Liabil. Litig.*, 606 F. Supp. 713 (J.P.M.L. 1985) (denying transfer where "the great majority of parties responding to the Section 1407 motion oppose[] centralization"); *In re Women's Clothing Antitrust Litig.*, 455 F. Supp. 1388, 1391 (J.P.M.L. 1978) (the opposition of all parties to transfer except the moving plaintiffs in two actions "help[ed] tip the scales against transfer"); *In re Asbestos and Asbestos Insulation*

The parties opposing transfer agree that transfer and centralization will not serve the fundamental purpose of 28 U.S.C. § 1407 because "varying factual circumstances will still need to be examined on a case-by-case and state-by-state basis, making consolidation significantly *less* efficient."[3] Moreover, "centralizing [all] claims will not eliminate duplicative discovery or save time as there is little, if any, opportunity for cross-cutting motion practice or uniform discovery requests."[4] That both plaintiffs and defendant alike oppose transfer is a "persuasive factor" weighing against centralization.

### B.   The Northern District of Illinois Can Best Determine Whether The Society Actions Should Be Coordinated.

"Centralization under Section 1407 should be the last solution after considered review of all other options." *In re Six Flags Fair and Accurate Credit Transactions Act (FACTA) Litigation*, 289 F. Supp. 3d 1343 (J.P.M.L. 2018) (internal citations omitted); *In re Best Buy Co., Inc., California Song-Beverly Credit Card Act Litig.*, 804 F. Supp. 2d 1376, 1378 (J.P.M.L. 2011 (same). Plaintiff JDS 1455, Inc. already has moved in the Northern District of Illinois to relate and reassign the fourteen Society actions pending in that district to Judge Edmond E. Chang. Consistent with the Panel's directive that "[t]he parties also may seek to relate actions against a common insurer in a given district before one judge," the Panel should allow Judge Chang to decide whether or to what extent the Society actions should be coordinated in that district. *See In*

---

*Material Prods. Liab. Litig.*, 431 F. Supp. 906, 910 (J.P.M.L. 1977) ("virtually unanimous opposition of parties to transfer" is "a very persuasive factor in [the] decision to deny transfer").

[3]      Big Onion Plaintiffs' Response To Order To Show Cause, Dkt. No. 40, p. 6, *In re Society Insurance Company COVID-19 Business Interruption Protection Insurance Litigation*, MDL 2964 (J.P.M.L. 2020) (emphasis in original) ("Big Onion Response").

[4]      Billy Goat Entities' Response In Opposition To Transfer, Dkt. No. 41, p. 5, *In re Society Insurance Company COVID-19 Business Interruption Protection Insurance Litigation*, MDL 2964 (J.P.M.L. 2020) ("Billy Goat Response").

*re COVID-19 Bus. Interruption Prot. Ins. Litig.*, MDL 2942, 2020 WL 4670700, at *4 (J.P.M.L. Aug. 12, 2020).

The few plaintiffs supporting § 1407 centralization of the Society actions all request that they be centralized before Judge Chang specifically or in the Northern District of Illinois generally.[5] The Panel should not to divest Judge Chang of his jurisdiction to rule on whether these cases should be related and reassigned to him, only to then centralize the Society Actions in his court, triggering an "inevitable debate on a leadership structure, the process of appointing various lead and liaison counsel . . . and the establishment of a uniform case schedule." *See* Big Onion Response at p. 6.

The parties are actively pursuing "alternatives to centralization [] to minimize any duplication in pretrial proceedings" and there is no need for an MDL proceeding. *In re COVID-19 Bus. Interruption Prot. Ins. Litig.*, 2020 WL 4670700, at *4. The best course is for the Panel to deny the transfer motions. The parties can also explore informal coordination or transfer under 28 U.S.C. § 1404(a) as needed to eliminate risks of inconsistent pretrial rulings and duplicative discovery.

---

[5]     *See* Plaintiffs' Joint Response To The Panel's Rule To Show Cause Order And In Support Of Transfer Of The Society Insurance Actions To The Northern District of Illinois, Dkt. No. 34, p. 6 ("JDS 1455, Inc. Response") ("Judge Chang has been on the bench since 2010. He is experienced in presiding over complex matters, including those with multiple plaintiffs and multiple class actions"); Barn Plaintiffs' Interested Party Response To Order To Show Cause For Transfer And Coordination Or Consolidation Under 28 U.S.C. § 1407, Dkt. No. 35, p. 5 ("The Barn Response") ("Judge Chang [is an] experienced jurist[] and [is] more than capable of managing the litigation"); Plaintiffs' Response To Order To Show Cause In Support Of Transfer Of Actions Pursuant to 28 U.S.C. § 1407 For Coordinated Or Consolidated Pretrial Proceedings, Dkt. No. 12, p. 11 ("Rising Dough Response") ("the Northern District of Illinois [is] an appropriate transferee district"); The Kedzie Boulevard Plaintiffs' Response To Order To Show Cause For Transfer And Coordination Or Consolidation Under 28 U.S.C. § 1407, Dkt. No. 8, p. 1 ("Kedzie Boulevard Response") (requesting centralization "in the Northern District of Illinois").

C.      The Issues To Be Adjudicated Are Legal

There is also no basis for an MDL as most plaintiffs and Society agree that the primary issues to be addressed in the Society actions are legal, not factual.[6] The three groups of plaintiffs supporting transfer do not identify sufficient common issues of fact to warrant an MDL.

Of the six "common issues" identified by the JDS 1455, Inc. Plaintiffs, five are pure questions of law raised in dispositive motions already pending in 17 of the 21 Society Actions.[7] The sixth issue, whether Society acted in bad faith in denying coverage, requires plaintiff-specific discovery that will be different in each case.[8] Further, JDS 1455 Plaintiffs miss the mark in claiming that, because Society Insurance has filed similar motions to dismiss or for summary judgment in multiple actions, there must be a "commonality of the issues." *See* JDS 1455, Inc.

---

[6]      *See* Billy Goat Response at p. 3 ("the Billy Goat Action presents strictly legal questions of insurance coverage"); Big Onion Response at p. 10 ("there is no federal common law of insurance policy interpretation" and "[t]he interpretation of each policy will be guided by [] (1) state-specific rules of insurance policy interpretation; and (2) pre-existing state court precedents"); Society Insurance's Response to Order To Show Cause, Dkt. No. 32, pp. 2-4.

[7]      The five issues are: "(1) Whether COVID-19 contamination of premises and property constitutes 'direct physical loss of or damage to' plaintiffs' property; (2) Whether the suspension of plaintiffs' business was 'caused by a direct physical loss of or damage to' their property; (3) Whether any of the losses incurred by plaintiffs constitute 'Extra Expense' as defined in the policy; (4) Whether any of the losses incurred by plaintiffs fall within the Civil Authority coverage, triggered by 'action of civil authority that prohibits access to the described premises'; and (5) Whether the omission of the industry standard virus exclusion establishes that virus-related losses are covered by the policy." *See* JDS 1455, Inc. Response at p. 2.

[8]      *See. e.g.*, Billy Goat Response at p. 5 (bad-faith actions "will require insured-specific discovery as to what Society knew about a particular claim [and] whether it performed a 'reasonable investigation' of that particular claim . . . Those claim-specific issues are not present in the Billy Goat Action. Combining the straightforward legal claims of Billy Goat with the factually intricate claims of bad faith alleged by several other plaintiffs will only serve to slow down the former in light of the discovery necessary for the latter").

Response at p. 3. Society's motions to dismiss or for summary judgment address issues of law, not fact, and issues of law are not appropriate for transfer under § 1407.[9]

The Barn Plaintiffs similarly argue that "Society has already begun filing dispositive motions which raise nearly identical arguments," mistakenly asserting that none have "yet been fully briefed,"[10] and concluding that it would waste judicial resources "to have essentially the same issues decided by multiple different judges." This argument fails because the motions present questions of law, and further "to avoid two federal courts having to decide the same issue is, by itself, usually not sufficient to avoid centralization." *In re Medi-Cal Reimbursement Rate Reduction Litig.*, 652 F. Supp. 2d 652 1378 (J.P.M.L. 2009).

Finally, the Rising Dough Plaintiffs fare no better in attempting to identify common issues of fact. Rising Dough claims that "each of the cases filed to date turns on two basic

---

[9]     *See, e.g.*, *In re Environmental Protection Agency Pesticide Listing Confidentiality Litig.*, 434 F. Supp. 1235, 1236 (J.P.M.L. 1977) ("since these actions involve a common question of law and share few, if any, questions of fact, transfer under Section 1407 is inappropriate"). This Panel has consistently recognized that "Section 1407 does not, as a general rule, empower the Panel to transfer cases involving only common legal issues." *In re Teamster Car Hauler Products Liabil. Litig.*, 856 F. Supp. 2d 1343 (2012) (transfer denied where "the defects alleged and injuries suffered vary among these actions"); *See also In re Healthextras Ins. Mktg. & Sales Practices Litig.*, 24 F. Supp. 3d 1376, 1377 (J.P.M.L. 2014) (denying centralization because "the key issue in all cases is legal in nature"); *In re ClearTalk-ZTE Arbitration Litig.*, 24 F. Supp. 3d 1374, 1375 (J.P.M.L. 2014) ("[T]he resolution of purely a legal issue or issues is generally insufficient to warrant centralization").

The Barn Plaintiffs cite *In re Terrorist Attacks on Sept. 11, 2001* for the proposition that "transfer is favored where there are overlapping legal issues among the various cases." 295 F. Supp. 2d 1377, 1378 (J.P.M.L. 2003); The Barn Response at pp. 2-3. Their reliance on *In re Terrorist Attacks* is misplaced. There, "the Panel [found] that the actions… involve common questions of fact" and "present common, complex legal and factual questions." *Id*. at 1378. *In re Terrorist Attacks* does not hold that common legal issues alone justify centralization.

[10]     Dispositive motions in these cases have been fully briefed: *Billy Goat Tavern I, Inc. et al. v. Society Insurance*, Case No. 1:20-cv-02068 (N.D. Ill.); *Peg Leg Porker Restaurant, LLC v. Society Insurance*, Case No. 3:20–0337 (M.D. Tenn.); and *Rising Dough, Inc. et al. v. Society Insurance*, Case No. 2:20–00771 (E.D. Wis.).

questions . . . (1) whether COVID-19 causes 'physical damage or loss to property' . . . and (2) whether COVID-19 was present on the insured property or on property sufficiently connected by proximity in other ways to the insured property such that coverage is triggered." *See* Rising Dough Response at p. 5. The first question, whether COVID-19 triggers "physical damage or loss" coverage, is a legal question of insurance contract interpretation. The second question, whether COVID-19 was present on a particular insured property, requires an individualized factual inquiry for each insured and is not susceptible to common proof or discovery. Notwithstanding Rising Dough's concern about a hypothetical shortage of "epidemiological modelers," the requisite factual inquiries remain specific to each plaintiff. *See* Rising Dough Response at pp. 6-7.

Because the Society actions do not involve common issues fact, they are not appropriate for centralization under § 1407.

## III.    CONCLUSION

Creating an MDL for the Society actions is not in the best interest of the parties, the transferee court, or this Panel. Inefficiencies would needlessly be generated and the resolution of these matters would be delayed. For these reasons, Society respectfully urges the Panel to deny the motions to transfer for the Society actions, and allow the cases to proceed in their home courts where they can be most expeditiously adjudicated.

Dated: September 2, 2020

Respectfully submitted,

CROWELL & MORING LLP
Laura A. Foggan

/s/ Laura A. Foggan
Laura A. Foggan
CROWELL & MORING LLP
1001 Pennsylvania Avenue NW

Washington, DC 20004-2595
Telephone: (202) 624-2774
Facsimile: (202) 628-5116
lfoggan@crowell.com
*Attorney for Defendant Society Insurance*