**BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION**

| | | |
|---|---|---|
| IN RE: SOCIETY INSURANCE COMPANY COVID-19 | ) | MDL No. 2964 |
| BUSINESS INTERRUPTION PROTECTION | ) | |
| INSURANCE LITIGATION | ) | |

**PLAINTIFFS' REPLY TO RESPONSES TO ORDER TO SHOW CAUSE**

Pursuant to 28 U.S.C. § 1407 and Panel Rule 8.1(d), Plaintiffs Rising Dough, Inc. (d/b/a Madison Sourdough), Willy McCoys of Albertville LLC, Willy McCoys of Andover LLC, Willy McCoys of Chaska LLC, Willy McCoys of Shakopee LLC, Whiskey Jacks of Ramsey LLC (d/b/a Willy McCoys Ramsey), Green Hills Grille LLC, Cash-Mckeown Futures LLC, and Wiseguys Pizzeria & Pub LLC[1] ("Plaintiffs") respectfully submit this consolidated reply to the responses to this Panel's August 12, 2020 Order to Show Cause, ECF No. 3, in support of the transfer of these actions pursuant to 28 U.S.C. § 1407 for coordinated or consolidated pretrial proceedings.

**I.      SECTION 1407 CENTRALIZATION IS APPROPRIATE.**

Society Insurance Company's ("Society") opposition to centralization and the creation of a Society-specific MDL does little more than mirror its opposition to the industry-wide MDL that was proposed in MDL No. 2942.  *Compare* ECF No. 32 *with* MDL No. 2942, ECF No. 371. Focusing on what it perceives as skepticism of an industry-wide MDL reflected at oral argument for MDL No. 2942, Society ignores the substance of the Panel's decision in MDL No. 2942 that led to the issuance of the Order to Show Cause being addressed here.  *See* Order Denying Transfer, MDL No. 2942, ECF No. 772; *see also* Society's Resp., ECF No. 32, at 1-2.

---

[1] Plaintiff Wiseguys Pizzeria & Pub LLC further joins in the response filed by the other Plaintiffs at ECF No. 42.

In fact, in its Order Denying Transfer, the Panel found that that "the arguments for insurer-specific MDLs are more persuasive" than those for an industry-wide MDL and, referencing the potential of an insurer-specific MDL, noted:

> Such an MDL would be limited to a single insurer or group of related insurers and thus would not entail the managerial problems of an industry-wide MDL involving more than a hundred insurers. The actions are more likely to involve insurance policies utilizing the same language, endorsements, and exclusions. Thus, there is a significant possibility that the actions will share common discovery and pretrial motion practice. Moreover, centralization of these actions could eliminate inconsistent pretrial rulings with respect to the overlapping nationwide class claims that most of the insurers face. An insurer-specific MDL therefore could achieve the convenience and efficiency benefits envisioned by Section 1407.

MDL No. 2942, ECF No. 772, at 3-4.  Believing, based upon the submissions in MDL No. 2942, that Society may very well be one of the defendants for whom an insurer-specific MDL was warranted, the Panel directed the Clerk of the Panel to issue an order to show cause as to why a Society-specific MDL should not be created. *Id*. at 4.  Indeed, the convenience and efficiencies contemplated by Section 1407 can be obtained in a Society-specific MDL.

Society's rebuttal boils down to the basic themes that most defendant-insurers have echoed: there are only common questions of law, not fact; centralization will be neither efficient nor convenient; and multiple classes do not warrant centralization.  *See* ECF No. 32.  However, even Society concedes that there are at least 21 cases (now approximately 24)[2] that are currently pending in federal courts.  *See* ECF No. 32 at 1.  And, Society has done little to address the overlapping factual, legal and class issues that permeate each of these cases that could benefit from centralization.  As set forth below, these 21 cases do share many common questions of fact,

---

[2] Shortly before the time of filing, this MDL's docket included 24 actions.  These and any subsequent tag-along actions are referred to herein as the "Related Actions."

common questions of law, and overlapping classes whose resolution would benefit greatly by centralization.

### A.       The Related Actions Share Many Common Questions of Fact.

As noted in Plaintiffs' Response to the Order to Show Cause, ECF No. 42, at 4-8, there are numerous factual issues that are common to the Related Actions including materially identical policy language, endorsements, and exclusions; materially identical government shutdown orders; and materially identical claims. Society tries to minimize these differences by relying upon minor distinctions such as whether a given shutdown order required complete closure or only impaired operations or by claiming that various policyholders may have different positions as to whether the virus was present at the property. *See* ECF No. 32 at 7. However, "Section 1407 does not require a complete identity or even majority of common factual issues as a prerequisite to transfer." *See, e.g., In re Ins. Brokerage Antitrust Litig.*, 360 F. Supp. 2d 1371, 1372 (J.P.M.L. 2005).

Furthermore, Society's position misses the point. The similarity in policy language, endorsement and exclusions is what will drive the common discovery. Indeed, the meaning of the terms in the policy will be subject to common discovery and the key witnesses will be similar, if not identical. In addition, as noted previously by Plaintiffs and highlighted by additional respondents, Society relies on standardized forms prepared by the Insurance Services Office, known as "ISO." *See Hartford Fire Ins. Co. v. California*, 509 U.S. 764, 772 (1993) (recognizing that "most primary insurers" in the United States use insurance forms from ISO, "an association of approximately 1,400 domestic property and casualty insurers" as the basis for their policies); *see also* ECF No. 43 at 4-6 (explaining ISO and Society's use of ISO standardized forms). Because of the uniformity in the policy language, even though the actions here involve different states or certain plaintiffs may have different exclusions, all of the claims

arise from a common foundation in the form of ISO's policies and/or Society's standard modifications to those policies. The interpretation of the standardized forms and the discovery needed to decide those questions will be common across cases and centralization would promote uniformity in the answers to those questions.

In addition, Society skirts over the issue of the common evidence on which Plaintiffs will necessarily rely to show the virus caused physical loss or damage to the property or whether the virus is present at the property. Unlike a typical insurance case, the cause of the damage here is a virus that cannot be seen or otherwise detected through normal means. Thus, the question of its presence cannot be resolved through testimony from typical fact witnesses such as the individual plaintiffs and discovery about their individual experiences. Rather, as Plaintiffs discussed in their Response, the presence of the virus will likely be established through epidemiological modeling, *see* ECF No. 42 at 6-7, which would be most efficiently and cost-effectively done in a coordinated fashion.

Likewise, the impact of the various government orders at issue should also be adjudicated in a coordinated proceeding. While not identical, these orders involve considerably less variation than their sheer number might imply. By far the most common order, for instance, was that Plaintiffs' businesses simply shut down. Although the plaintiffs may have been subject to stay-at-home orders in different states, the import and effect of these orders was identical – the policyholders were required to close their businesses either fully, or in some cases, partially. To the extent the extent of the closures vary, it is a damages issue that does not preclude centralization. *See, e.g.*, *In re Valsartan N-Nitrosodimethylamine (NDMA) Contamination Prod. Liab. Litig.*, 363 F. Supp. 3d 1378, 1381-82 (J.P.M.L. 2019) (centralizing consumer claims for economic damages with personal injury claims). And, even in those instances where shutdown

orders have now been relaxed, the ways in which states have done so can be broken down into a limited number of categories.[3]  The relatively limited number of variations between these orders is dwarfed by the number of inconsistent discovery and other pretrial rulings that will issue regarding these orders should these cases all proceed on separate tracks.

These issues with respect to the standardized policies, physical presence of the virus, and materially-identical government shutdown orders are factual and common to the Related Actions.  These issues can, and should, be resolved in a common way in a centralized proceeding.  In addition, these common questions of fact also heighten the likelihood that, at minimum, certification of the classes proposed in many of these actions will require significant judicial resources to resolve.  This Panel has already recognized that "centralization of these actions could eliminate inconsistent pretrial rulings with respect to the overlapping nationwide class claims that most of the insurers face."  MDL No. 2942, ECF No. 772, at 3-4.  Society's response to the Panel's recognition of the issues with respect to overlapping classes is only to propose that the proposed class actions be coordinated within the Northern District of Illinois. ECF No. 32 at 10-11.  But Society has no proposal for how proposed class actions pending outside the District, of which there are already three,[4] could also be coordinated; as this Panel has already noted, transfer and centralization is the natural and appropriate solution to this issue.

---

[3] *See, e.g.*, https://www.nytimes.com/interactive/2020/us/states-reopen-map-coronavirus.html (placing the pandemic response in each of the 50 states into four categories – reversing, pausing, reopening, and reopened – and noting the impact of the orders currently in place on seven categories of businesses).

[4] These actions include *Rising Dough, Inc. v. Society Insurance*, No. 2:20-cv-00623 (E.D. Wis.); *Ambrosia Indy LLC v. Society Insurance*, No. 2:20-cv-00771 (E.D. Wis.); and *Wiseguys Pizzeria & Pub LLC v. Society Insurance*, No. 2:20-cv-01340 (E.D. Wis.);

**B.      Resolution of the Related Actions' Common Questions of Law Would Also Benefit from Centralization.**

In addition to the common questions of fact that these Related Actions share, the common questions of law that these Related Actions indisputably share also support centralization.  While this Panel has held that common questions of law are not by themselves sufficient to warrant transfer absent common questions of fact, this does not mean that common legal questions are irrelevant to the analysis.  When Section 1407's requirement that there be "one or more common questions of fact" is satisfied, the presence of one or more common questions of law means that centralization would even further "promote the just and efficient conduct of such actions."  28 U.S.C. § 1407; *see, e.g.*, *In re Vision Serv. Plan Tax Litig.*, 484 F. Supp. 2d 1356, 1357 (J.P.M.L. 2007) (centralizing actions because they "involve identical legal questions" and to "prevent inconsistent pretrial rulings").  As this Panel has already noted, an MDL specific to Society is "more likely to involve insurance policies utilizing the same language, endorsements, and exclusions," ECF No. 772 in MDL No. 2942, which would present common issues of policy interpretation.

Thus, there are considerable efficiencies to centralizing these actions, and the pending motions to dismiss, before the same transferee judge.  As the Second Circuit noted in *In re Ivy*, 901 F.2d 7 (2d Cir. 1990), when faced with a legal issue of law and fact that was "easily capable of arising in hundreds of even thousands of cases in district courts throughout the nation,…there are real economies in transferring such cases" to a single judge under Section 1407.  *Id.* at 9. "Once transferred, the [legal issue] can be heard and resolved by a single court and reviewed at the appellate level in due course.  Consistency was well as economy is thus served." *Id.*

Finally, Society's argument that centralization would delay resolution of its pending motions to dismiss, *see* ECF No. 32 at 3, has already been considered and rejected by this Panel:

The parties opposing centralization assert that, *inter alia*, centralization will needlessly delay resolution of the Massachusetts action, in which a fully briefed motion to dismiss is already pending. Based upon the Panel's precedents and for the following reasons, we respectfully disagree with this argument. While there may indeed be some initial delay incorporating all actions into a centralized forum, ***centralization nevertheless carries the benefit of placing all of these related nationwide class actions before a single judge*** who can structure pretrial proceedings to accommodate all parties' legitimate discovery needs while ensuring that common parties such as Prudential and other witnesses are not subjected to discovery demands that duplicate activity in other actions."

*In re Prudential Ins. Co. of Am. SGLI/VGLI Contract Litig.*, 763 F. Supp. 2d 1374, 1375 (J.P.M.L. 2011).  The gains from centralization here are similarly too great to justify permitting dozens of different courts to reach inconsistent rulings on the pending motions to dismiss.

## II.   THE EASTERN DISTRICT OF WISCONSIN IS THE APPROPRIATE FORUM FOR TRANSFER AND CENTRALIZATION

For the reasons set forth in their Response, Plaintiffs believe that transfer and centralization in the Eastern District of Wisconsin is most appropriate for this litigation. *See* ECF No. 42 at 10-11.  Society maintains its headquarters in that District, and there are currently three class cases pending there.  Transfer to the Eastern District of Wisconsin would best promote the convenience of the parties and witnesses as provided by Section 1407.

Alternatively, the Northern District of Illinois before the Honorable Matthew F. Kennelly would also serve as an appropriate transferee forum.  *See* ECF No. 42 at 11.  Nineteen of the current 24 Related Actions are currently pending there, and transfer to that District is also supported by the plaintiffs in five other actions.  *See* ECF No. 34 at 5-6; ECF No. 35 at 4-5; ECF No. 45 at 1.

## III.   CONCLUSION

For the above-stated reasons, as well as those discussed in Plaintiffs' Response, ECF No. 42, Plaintiffs respectfully request that the Panel transfer these Related Actions for coordinated or consolidated pretrial proceedings in the Eastern District of Wisconsin or, in the alternative,

before the Honorable Matthew F. Kennelly in the United States District Court for the Northern

District of Illinois.

Dated:  September 2, 2020                          Respectfully submitted,

/s/ *Arnold Levin*

Arnold Levin, Esquire
Laurence S. Berman, Esquire
Frederick S. Longer, Esquire
Daniel C. Levin, Esquire
Keith J. Verrier, Esquire
**LEVIN SEDRAN & BERMAN LLP**
510 Walnut Street, Suite 500
Philadelphia, PA 19106-3697
Telephone: (215) 592-1500
Facsimile: (215) 592-4663
alevin@lfsblaw.com
lberman@lfsblaw.com
flonger@lfsblaw.com
dlevin@lfsblaw.com
kverrier@lfsblaw.com


Richard M. Golomb, Esquire
Kenneth J. Grunfeld, Esquire
**GOLOMB & HONIK, P.C.**
1835 Market Street, Suite 2900
Philadelphia, Pennsylvania 19103
Telephone: (215) 346-7338
Facsimile: (215) 985-4169
rgolomb@GolombHonik.Com
KGrunfeld@GolombHonik.Com


W. Daniel "Dee" Miles, III
Rachel N. Boyd
Paul W. Evans
**BEASLEY, ALLEN, CROW, METHVIN,
PORTIS & MILES, P.C.**
P.O. Box 4160
Montgomery, Alabama  36103
Telephone: (334) 269-2343
Facsimile: (334) 954-7555
Dee.Miles@BeasleyAllen.com
Rachel.Boyd@BeasleyAllen.com
Paul.Evans@BeasleyAllen.com

/s/ *Mark Lanier*

Mark Lanier
Alex Brown
Ralph (skip) McBride
**THE LANIER LAW FIRM PC**
10940 West Sam Houston Parkway North
Suite 100
Houston, Texas 770064
Telephone: (713) 659-5200
WML@lanierlawfirm.com
Alex.brown@lanierlawfirm.com
Skip.McBride@lanierlawfirm.com


Adam J. Levitt
John E. Tangren
Amy E. Keller
Daniel R. Ferri
Mark Hamill
Laura E. Reasons
**DiCELLO LEVITT GUTZLER LLC**
Ten North Dearborn Street, Sixth Floor
Chicago, Illinois 60602
Telephone: (312) 214-7900
alevitt@dicellolevitt.com
jtangren@dicellolevitt.com
akeller@dicellolevitt.com
dferri@dicellolevitt.com
mhamill@dicellolevitt.com
lreasons@dicellolevitt.com


Mark A. DiCello
Kenneth P. Abbarno
Mark Abramowitz
**DiCELLO LEVITT GUTZLER LLC**
7556 Mentor Avenue
Mentor, Ohio 44060
Telephone: (440) 953-8888
madicello@dicellolevitt.com
kabbarno@dicellolevitt.com
mabramowitz@dicellolevitt.com

8

***Counsel for Plaintiff Wiseguys Pizzeria &
Pub LLC***

Timothy W. Burns
Jeff J. Bowen
Jesse J. Bair
Freya K. Bowen
**BURNS BOWEN BAIR LLP**
One South Pinckney Street, Suite 930
Madison, Wisconsin 53703
Telephone: (608) 286-2302
tburns@bbblawllp.com
jbowen@bbblawllp.com
jbair@bbblawllp.com
fbowen@bbblawllp.com

Douglas Daniels
**DANIELS & TREDENNICK**
6363 Woodway, Suite 700
Houston, Texas 77057
Telephone: (713) 917-0024
douglas.daniels@dtlawyers.com

Jeffrey P. Goodman
Robert J. Mongeluzzi
Patrick Howard
Samuel B. Dordick
**SALTZ, MONGELUZZI &
BENDESKY, P.C.**
1650 Market Street
One Liberty Place, 52nd Floor
Philadelphia, Pennsylvania  19103
Telephone: (215) 496-8282
jgoodman@smbb.com
rjmongeluzzi@smbb.com
phoward@smbb.com
SDordick@smbb.com

***Counsel for Plaintiffs Rising Dough, Inc.
(d/b/a Madison Sourdough), Willy
McCoys of Albertville LLC, Willy
McCoys of Andover LLC, Willy McCoys
of Chaska LLC, Willy McCoys of
Shakopee LLC, Whiskey Jacks of
Ramsey LLC (d/b/a Willy McCoys
Ramsey), Green Hills Grille LLC, and
Cash-Mckeown Futures LLC***

9