## UNITED STATES JUDICIAL PANEL
### on
### MULTIDISTRICT LITIGATION

IN RE: SOCIETY INSURANCE COMPANY
COVID-19 BUSINESS INTERRUPTION PROTECTION
INSURANCE LITIGATION                                   MDL No. 2964

### TRANSFER ORDER

**Before the Panel:** At its July 2020 hearing session, the Panel considered two motions seeking centralization of an industry-wide litigation involving insurance claims for coverage of business interruption losses caused by the COVID-19 pandemic and the related government orders suspending, or severely curtailing, operations of non-essential businesses. We denied the motions, concluding that the differences among the many insurers would overwhelm any common factual questions and hinder the transferee court's ability to efficiently manage the litigation. *See In re COVID-19 Bus. Interruption Prot. Ins. Litig.*, MDL No. 2942, 2020 WL 4670700, __ F. Supp. 3d __ (J.P.M.L. Aug. 12, 2020). In the briefing on those motions, several parties proposed that insurer-specific MDLs be created. We concluded that we needed "a better understanding of the factual commonalities and differences among these actions, as well as the efficiencies that may or may not be gained through centralization, before creating an insurer-specific MDL." *Id.* at *3. So we ordered the Panel Clerk to issue orders directing the parties to certain actions involving a common insurer or group of insurers to show cause why those actions should not be centralized.

One of those orders encompassed the 21 actions listed on Schedule A, which involve claims against Society Insurance Company (Society). Since we issued this show cause order, the parties have notified us of thirteen related actions filed in seven districts.[1] Plaintiffs in ten of the 34 actions support the creation of a Society MDL in the Northern District of Illinois. Plaintiffs in two actions support centralization in the Eastern District of Wisconsin, and one of those plaintiffs (in the *Rising Dough* action) alternatively support a Northern District of Illinois transferee district. Plaintiffs in two Northern District of Illinois actions (*Big Onion* and *Billy Goat*) and the Middle District of Tennessee *Peg Leg Porker* action oppose centralization. If an MDL is created over their objections, the *Billy Goat* and *Peg Leg Porker* plaintiffs request exclusion from it. Defendant Society opposes centralization. Additionally, the Panel received two briefs by amici curiae, one in support of and one in opposition to centralization.

---

[1] These actions, and any other related actions, are potential tag-along actions. *See* Panel Rules 1.1(h), 7.1 and 7.2.

-2-

After considering the arguments of counsel,[2] we conclude that centralization of the Society actions listed on Schedule A will serve the convenience of the parties and witnesses and further the just and efficient conduct of this litigation.  Society is a regional carrier operating in six Midwestern states – Illinois, Indiana, Iowa, Minnesota, Tennessee and Wisconsin.  Policyholders have brought individual and putative nationwide and statewide class actions against Society.  These actions share common factual allegations that Society wrongfully denied policy holders' claims for business interruption protection insurance.  Plaintiffs contend that Society preemptively decided to deny their claims, which are brought under various property insurance policies that, depending on the provisions plaintiff has purchased, provide: (1) business income coverage, (2) civil authority coverage, (3) extra expense coverage, (4) contamination coverage, and (5) sue and labor coverage.  On March 16, 2020, Society CEO Rick Parks circulated a memorandum to Society's "agency partners," acknowledging that states had "taken steps to limit operations of certain businesses," and concluding that Society's policies likely would not provide coverage for losses for a "governmental imposed shutdown due to COVID-19 (coronavirus)."  The insurance policies at issue in the Society actions appear to use standard forms drafted by the Insurance Services Office (ISO) and will involve the interpretation of common policy language.  The actions therefore will require an assessment of whether COVID-19 caused any direct physical loss of or to property, and whether any of Society's policy exclusions apply to preclude plaintiffs' claims.  To the extent discovery is necessary of Society regarding the drafting and interpretation of it policies, that discovery will be common to all actions.  Thus, these actions present common factual and legal questions that support centralization.

In addition to requiring common factual questions, Section 1407 also requires that centralization promote the just and efficient conduct of the actions.  This litigation demands efficiency.  As counsel repeatedly emphasized in their papers and during oral argument, time is of the essence in this litigation.  Many plaintiffs are on the brink of bankruptcy as a result of business lost due to the COVID-19 pandemic and the government closure orders.  The most pressing question before us, then, is whether centralization presents the most efficient means of advancing these actions towards resolution.  Unlike the other business interruption insurance dockets arising from MDL No. 2942 in which we have denied centralization, we find that centralization presents the most efficient means of advancing these actions toward resolution.  Here, there are before us 34 total actions pending in six nearby states, the majority in one district.  This suggests to us that this litigation presents a manageable controversy that can best be streamlined by proceeding before a single judge.

Society argues that centralization is not appropriate because the actions likely will involve primarily legal questions.  It is possible that plaintiffs' claims can be decided on motions to dismiss without need for discovery into, for example, the drafting of the policies at issue or epidemiological modeling of the spread of COVID-19.  But centralization may be warranted even where common questions of law are prominent, as long as common factual issues are present.  In such cases, "[t]he

---

[2] In light of the concerns about the spread of COVID-19 virus (coronavirus), the Panel heard oral argument by videoconference at its hearing session of September 24, 2020.  *See* Suppl. Notice of Hearing Session, MDL No. 2964 (J.P.M.L. Sept. 8, 2020), ECF No. 76.

Panel must determine the extent of the common factual issues and the likelihood that centralized pretrial proceedings will create important efficiencies, avoid inconsistent rulings, and result in the overall fairer adjudication of the litigation for the benefit of all involved parties." *In re Polar Bear Endangered Species Act Listing & 4(d) Rule Litig.*, 588 F. Supp. 2d 1376, 1377(J.P.M.L. 2008). Here, significant factual questions exist among the actions, and centralization will create substantial efficiencies for the parties and the courts.

Opponents of centralization also argue that, should plaintiffs' claims survive dispositive rulings on policy interpretation questions, discovery will be plaintiff- and property-specific. There likely will be, by necessity, some unique aspects of each case. Were this litigation larger in geographic scope and if it involved more state laws (such as in some of the other show cause dockets before us), this might be a more persuasive argument because the transferee judge would be tasked with managing a much more complicated litigation. What sets this litigation apart is the defined geographical scope of these actions, which implicates only six state insurance laws. We note that the transferee judge can employ any number of pretrial techniques – including establishing state-specific tracks and selecting certain already-briefed motions in individual cases as bellwether motions – to manage any differences that the Society actions present.

Certain parties also assert that informal coordination among the parties and courts is preferable to formal centralization. We do not view alternatives to centralization to be an adequate substitute for an MDL here. There are nearly three dozen cases brought by diverse counsel before more than twenty judges, which makes coordination difficult. The parties also seem to disagree about how to accomplish such coordination; in fact, one effort to streamline the litigation – intra-district reassignment to a single judge in the Northern District of Illinois cases – was opposed by Society and some plaintiffs.

We are persuaded that the Northern District of Illinois is an appropriate transferee district. The district is the obvious center of gravity of this litigation against Society, with 22 of the total 34 pending cases filed there. Chicago lies at the heart of Society's regional business and represents an accessible forum with the capacity to efficiently manage these cases. Also, it is conveniently located near Society's Milwaukee, Wisconsin headquarters. We are confident that Judge Edmond E. Chang, who has not yet had the opportunity to preside over an MDL, will steer this litigation on a prudent and expeditious course.

-4-

IT IS THEREFORE ORDERED that the actions listed on Schedule A and pending outside the Northern District of Illinois are transferred to the Northern District of Illinois and, with the consent of that court, assigned to the Honorable Edmond E. Chang, for coordinated or consolidated pretrial proceedings with the actions pending there and listed on Schedule A.

PANEL ON MULTIDISTRICT LITIGATION

_____

Karen K. Caldwell
Chair

| | |
|---|---|
| Ellen Segal Huvelle | R. David Proctor |
| Catherine D. Perry | Nathaniel M. Gorton |
| Matthew F. Kennelly | David C. Norton |

IN RE: SOCIETY INSURANCE COMPANY
COVID-19 BUSINESS INTERRUPTION PROTECTION
INSURANCE LITIGATION                                         MDL No. 2964

## SCHEDULE A

Northern District of Illinois

BIG ONION TAVERN GROUP, LLC, ET AL. v. SOCIETY INSURANCE, INC.,
    C.A. No. 1:20‒02005
BILLY GOAT TAVERN I, INC., ET AL. v. SOCIETY INSURANCE,
    C.A. 1:20‒02068
BISCUIT CAFE INC., ET AL. v. SOCIETY INSURANCE, INC., C.A. No. 1:20–02514
DUNLAYS MANAGEMENT SERVICES, LLC, ET AL. v. SOCIETY INSURANCE,
    C.A. No. 1:20–02524
JDS 1455, INC. v. SOCIETY INSURANCE, C.A. No. 1:20–02546
351 KINGSBURY CORNER, LLC v. SOCIETY INSURANCE, C.A. No. 1:20–02589
ROSCOE SAME LLC, ET AL. v. SOCIETY INSURANCE, C.A. No. 1:20–02641
KEDZIE BOULEVARD CAFE INC. v. SOCIETY INSURANCE INC.,
    C.A. No. 1:20–02692
VALLEY LODGE CORP. v. SOCIETY INSURANCE, C.A. No. 1:20–02813
THE BARN INVESTMENT LLC, ET AL. v. SOCIETY INSURANCE,
    C.A. No. 1:20–03142
PURPLE PIG CHEESE BAR & PORK STORE, LLC v. SOCIETY INSURANCE,
    C.A. No. 1:20–03164
CIAO BABY ON MAIN LLC v. SOCIETY INSURANCE INC., C.A. No. 1:20–03251
CARDELLI ENTERPRISE, LLC v. SOCIETY INSURANCE, C.A. No. 1:20–03263
726 WEST GRAND LLC, ET AL. v. SOCIETY INSURANCE, C.A. No. 1:20–03432
DEERFIELD ITALIAN KITCHEN, INC. v. SOCIETY INSURANCE, INC.,
    C.A. No. 1:20–03896
THE WHISTLER LLC, ET AL. v. SOCIETY MUTUAL INSURANCE COMPANY,
    C.A. No. 1:20–03959
RIVERSIDE ENTERPRISES, LLC v. SOCIETY INSURANCE, C.A. No. 1:20–04178

District of Minnesota

LUCY'S BURGERS, LLC v. SOCIETY INSURANCE, INC., C.A. No. 0:20–01029

Middle District of Tennessee

PEG LEG PORKER RESTAURANT, LLC v. SOCIETY INSURANCE,
    C.A. No. 3:20–00337

-A2-

<u>Eastern District of Wisconsin</u>

RISING DOUGH, INC., ET AL. v. SOCIETY INSURANCE, C.A. No. 2:20−00623
AMBROSIA INDY LLC v. SOCIETY INSURANCE, C.A. No. 2:20–00771